IRVING COOPER, Plaintiff, *v.* CHARLES SCHIRRMEISTER, JR., and Another, Defendants.

City Court of New York, New York County, March 4, 1941.

*Saul Hammer*, for the plaintiff.

*Edward J. Bausch*, for the defendants.

MADIGAN, J.   This is a non-jury action for malicious prosecution. The plaintiff was charged with a misdemeanor under section 925 of the Penal Law, relating to frauds on hotel keepers and others.

He and his family occupied, under a lease for a term of six months, a small furnished apartment in a building at 305 West Eighty-eighth street, New York city, called the Hotel Oxford, owned and operated by the corporate defendant.   The other defendant was in charge of the premises.

When plaintiff accepted the lease, restrictions on cooking, house-keeping and other restrictions, simulating a hotel atmosphere, were eliminated from the lease form used by the corporate defendant. The provision that the " Tenant " would patronize the restaurant, maintained in the building by the " Landlord," was also scratched out.   Many of the clauses of the lease were such as are usually found in apartment house leases.

There are 110 to 115 apartments, each of two or three rooms with kitchenette, in the so-called Hotel Oxford.   The number of apartments varies inasmuch as the rooms may be arranged, somewhat at will, to make suites of two or of three rooms.

Maid service for the apartments is furnished free to the occupants; also vacuum cleaning of their rooms once a month.

When renting is poor, transients are taken, but very infrequently at most.   According to an alleged register, said to be kept at the desk near the main entrance, three to five persons have been accommodated as transients each year since 1935.   Even this is doubtful. The apartments usually have been leased, probably for terms of months.

In the Court of Special Sessions it was held, in effect, that section 925 of the Penal Law could not under the circumstances be successfully invoked inasmuch as the relationship between the corporate defendant and plaintiff was not that of hotel keeper and guest as these defendants assert.   That court dismissed the charge at the end of the People's case.   No evidence was taken from this plaintiff. No finding of fact was made as to any contested issue.

In the briefs here, several questions of law are discussed by counsel.   Most of them need not be decided.   Questions of fact are also presented.

It is held that, so far as concerns the demise to this plaintiff, the premises did not constitute a hotel within the meaning of section 925 of the Penal Law.

As to plaintiff the corporate defendant was either the keeper of an apartment hotel or the landlord of an apartment house.

For defendants it is urged that section 925 of the Penal Law applies to apartment hotels; that as employed in such statute the term " hotel " includes an " apartment hotel."

It is true that a resident of an apartment hotel may readily remove his belongings, usually consisting not of furniture but of clothing and other " baggage." It is also true that the failure to make said section 925 apply to frauds on keepers of apartment hotels has an odd result Proprietors of apartment hotels as well as hotel keepers are given a lien by section 181 of the Lien Law, whereas section 925 of the Penal Law does not mention apartment hotels, though it is directed against frauds on hotel keepers and proprietors of other places of abode

Here the lease to plaintiff stipulated that the premises constitute an apartment hotel within the meaning of section 181 of the Lien Law, the provisions of which section, as the lease stated. " shall apply to all property brought into the said building.'

Defendants, however, are confronted with the fact that the Legislature has not inserted the term ' apartment hotel " in section 925 of the Penal Law. This must be held deliberate in the absence of any expression or action on the part of the Legislature which might be deemed a sufficient basis for ascribing a different intent to the law makers.

It is well to note, moreover, that statutes antecedent to the present section 925 of the Penal Law apparently go back some sixty years, to a time when " hotel " could not mean " apartment hotel " inasmuch as the apartment hotel of this day was then unknown.

As indicating the fraud which defendants charged in support of the prosecution under section 925 of the Penal Law, they assert that plaintiff and members of his family removed their belongings, on a night in August, 1939, after nine o'clock, through a service exit without passing the desk near the main entrance. Plaintiff denies that anything was taken out surreptitiously. However, he had hired an apartment in another building and he had stipulated there for free occupancy until October 1, 1939. He apparently did not announce at the desk in the building conducted by the corporate defendant that he was leaving and he left no forwarding address

It is found that plaintiff departed from the " Hotel Oxford " with his effects and those of his family without the knowledge or consent of defendants, though it had been suspected that he was about to leave somewhat as he did. It is also found that his purpose was to avoid paying his bill for rent, electricity and telephone service.

The electric service had been disconnected because he had not paid for electric current which he or his family had used, but it is found that is not true, as he asserts, that he left because defendants had stopped furnishing electricity to his apartment.

Though a certificate of occupancy had been duly issued by a city department for the use as a hotel of the building at 305 West Eighty-eighth street, defendants should have known that they were not conducting it as a hotel, as to plaintiff at least. Permission to use the premises as a hotel is indicated by the certificate of occupancy, but such permission does not imply that the premises were actually being used as a hotel.

When defendants and their attorney applied for a summons, it is not believed that they gave the magistrate all the facts bearing on the question as to whether there actually was hotel use of the premises and, as to that question, when, on the return day of the summons, defendants and their lawyer and plaintiff and his lawyer appeared before the same magistrate, the decision of the magistrate to hold plaintiff was rather *pro forma* and inconclusive as to the use to which the building had been put.

Again, it may be noted that before the trial in the Court of Special Sessions, defendants suggested a settlement of the bill owing to them from plaintiff.

These and other elements in the evidence lead to the conclusion that defendants knew that it was venturesome to institute and prosecute the criminal charge and that nevertheless they proceeded in the hope that, by pressing plaintiff, they might bring him to pay his debt to them.

Lack of probable cause and actual malice are found.

Plaintiff is entitled to punitive damages.

Plaintiff's motion to dismiss the defense set up in the answer is granted.

The minutes of the trial in the Court of Special Sessions are stricken from this record excepting in so far as they show that either defendants' witness Alvarez or their witness Schirrmeister gave testimony in that court inconsistent with testimony given by him here.

Plaintiff's going into bankruptcy does not imply wrongdoing and it does not in this case detract from his character.

The acceptance of late payments from plaintiff did not alter the due dates of his obligations under the lease.

Testimony of the witness Blanche M. Hart objected to by defendants was not adequately connected and, so far as objected to, her testimony has been given no effect.

Defendants' motions to dismiss are denied.

The claim as to humiliation has been considered, but it is believed that plaintiff suffered but very little humiliation.

. Judgment for $350 in favor of plaintiff and against defendants. That amount includes exemplary damages.